UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| LINDA IRENE WILSON | ) | |
| | ) | |
| V. | ) | NO. 2:12-CV-46 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |

### REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's applications for disability insurance benefits and supplemental security income under the Social Security Act were administratively denied following a hearing before an Administrative Law Judge ["ALJ"].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence.

*Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff, who is now 60 years of age, was 58 at the time the ALJ rendered his hearing decision (Tr. 14-28). She is five feet, three inches tall. The two times she was weighed in the record (Tr. 246 and 258], she weighed 104 and 106 pounds, respectively. She has a high school education and past relevant work experience as a housekeeper which was light and unskilled (Tr. 47). Given her age, in order to not be mandatorily found disabled under the Medical-Vocational Guidelines (the "Grid"), she must have the exertional capacity to perform medium work, which entails the ability to occasionally lift 50 pounds, and frequently lift or carry up to 25 pounds. 20 CFR §404.1567(c). As stated by the ALJ at the hearing, "at age 55, she'd be disabled under the medical vocational guidelines at light work." (Tr. 48). Light work entails occasional lifting of 20 pounds and frequent lifting and carrying of up to 10 pounds. 20 CFR §404.1567(b).

The ALJ found that the plaintiff had severe impairments of "Chronic Obstructive Pulmonary Disease, Degenerative Disc Disease, and Anxiety Disorder." (Tr. 17). Although she could not return to her past relevant work because it would require her to be around occasional chemical fumes, the ALJ found that the plaintiff "has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) that does not involve work around dust, respiratory irritants, or temperature extremes due to a respiratory

2

impairment; and further takes into consideration an emotional disorder with restrictions regarding the ability to perform work related activities consistent with Exhibit 6F (capable of performing lower level detailed work; with some social problems; and able to interact appropriately and adapt to infrequent changes in a work routine, coupled with some limitations in concentration, persistence, and pace; but maintaining adequate abilities)." (Tr. 21).

Plaintiff's medical history is fairly summarized in her brief as follows:

> Plaintiff received treatment at The Family Practice Center from November 23, 1999 through February 19, 2004. Treatment was rendered for right knee pain, intractable low back pain, SI joint pain, urinary tract infection, anxiety, nervousness, stress, depression, respiratory tract infection, chronic obstructive pulmonary disease, hot flashes, right breast cyst, and painful mole (Tr. 213-239).
> On October 10, 2006, Plaintiff underwent consultative exam by John W. Thurman, Ph.D. Plaintiff reported that she had been getting suicidal; that her nerves are bad; that she can't stand to hear her grandchildren fussing at times; that the least little thing makes her go off; that driving makes her nervous; and that she can't stand to be around people at times. Plaintiff's grooming and hygiene were fair; she appeared about ten years older than stated; her immediate recall was delayed; her general fund of knowledge, reasoning, and abstract thinking were limited; she was not able to complete serial 7's or spell the word "world" backwards; and her intelligence level was estimated to be borderline. The diagnoses were anxiety disorder, NOS, mild; rule out cognitive disorder, NOS, mild neurocognitive impairment secondary to old TBI; and rule out borderline intellectual function; with a global assessment of functioning (GAF) of 59. Dr. Thurman opined Plaintiff is markedly limited in her ability to comprehend and carry out complex and detailed instructions and moderately limited in her ability to comprehend and carry out multi-step instructions, work with public, and cope with work-related stress. Plaintiff was noted to have a mild to moderate impairment in the areas of make work-related decisions, motivation and energy, anxiety in social settings, interact appropriately with others, maintain emotional stability, and adapt to work setting. Plaintiff was noted to have a mild impairment in the areas of pay attention to work environment, help maintain safe work environment, maintain mental persistence, and comprehend and carry out simple instructions (Tr. 240-244).
> Plaintiff underwent consultative exam by Dr. David McConnell on November 13, 2006. Presenting problems included progressively worsening chronic knee pain, back pain, bad nerves, and depression. On exam, Plaintiff was underweight at 63 inches and 104 pounds; she had a barrel-shaped chest, with increased AP diameter and distant breath sounds; and she had decreased lumbar range of motion and pain with bilateral knee extension. Lumbosacral spine x-rays were noted to reveal findings suggestive of

3

degenerative disc at L5-S1. The diagnoses were major depression, chronic low back pain, degenerative disc disease at L5-S1, chronic right knee pain, and 32 pounds underweight. Dr. McConnell opined Plaintiff can occasionally lift and/or carry a maximum of 40 pounds; can frequently lift and/or carry a maximum of 35 pounds; can stand and/or walk for a total of at least six hours in an eight-hour workday; and can sit for a total of at least seven hours in an eight-hour workday (Tr. 245-249).

On November 13, 2007, Plaintiff underwent consultative exam by Donna Abbott, M.SA. Plaintiff reported that her nerves are bad and she just wants to get away from people at times; that she has a problem with her nerves that makes her feel like she does not want to do anything; that after her boyfriend died, she did not give a hoot; and that she feels like no one cares about her at times. Plaintiff appeared older than her chronological age; she could not recall a recent news event; she was generally vague; she could not interpret common proverbs; she did not know what she would do if she were lost in the forest in the daytime; and she counted slowly and could not spell the word "world" backwards. The diagnosis was bereavement, with a GAF of 60. Ms. Abbott opined Plaintiff can understand and remember and her estimated intellectual functioning is low average; she can attend and concentrate; she should be able to maintain simple routine; social interaction is fair; general adaptation skills show mild limitation; she can be aware of simple hazards and take precautions; she should be able to work in proximity to others; she should be able to set some goals and make plans to achieve these goals; and she may have some difficulty adapting to change and dealing with stress (Tr. 250-256).

Plaintiff underwent consultative exam by Dr. Wayne C. Page on December 14, 2007. Dr. Page notes that his exam was limited to evaluation of legs and right shoulder. Dr. Page noted Plaintiff is limited as captioned with history and physical exam findings, which noted Plaintiff could lift 20 pounds on a one-time basis with both hands while standing and could lift greater than ten pounds with both hands while seated. The diagnosis was diffuse arthralgias (Tr. 257-259).[1]

On January 7, 2008, Plaintiff underwent pulmonary function study and chest x-ray by Dr. McConnell. The findings were suggestive of chronic obstructive pulmonary disease and the x-ray showed pulmonary fibrosis, hyperaeration of the lung fields, and sharp costovertebral lines (Tr. 278-281).

On December 19, 2007, a reviewing state agency psychologist opined Plaintiff is moderately limited in her ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting (Tr. 260-277). On April 1, 2008, a second reviewing state agency psychologist affirmed this assessment as written (Tr. 295).

---

[1] Dr. Page concluded that plaintiff "has no impairment-related physical limitation" (Tr. 258).

> On January 8, 2008, a reviewing state agency physician opined Plaintiff can lift/carry a maximum of 50 pounds occasionally, 25 pounds frequently; can stand/walk for a total of about six hours in an eight-hour workday; can sit for a total of about six hours in an eight-hour workday; and should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 282-289). On April 17, 2008, a second reviewing state agency physician affirmed this assessment as written (Tr. 296).
>
> Plaintiff received treatment at Rural Medical Services from January 14, 2009 through February 19, 2009. Problems noted during this time include severe anxiety, nervousness, social isolation, paranoia, depression, hypertension, rib pain, visual disturbance, cough wheezing, shortness of breath on exertion, chest pain, constipation, and headache (Tr. 297-304).[2]

[Doc. 11, pgs. 2-5].

At the administrative hearing, a vocational expert was asked to assume the residual functional capacity ["RFC"] set out above. He identified 8,000 medium level jobs in the region and 7.5 million in the national economy. (Tr. 47). If she only had the lifting capacity for light work, at her age she would be disabled under the Guidelines. (Tr. 48).

In his hearing decision, the ALJ found the RFC set out above with its medium work capability. (Tr. 21). The ALJ discussed Dr. McConnell's finding in his consultative examination, noting that Dr. McConnell opined that the plaintiff "maintained the capacity to lift and/or carry...for up to one-third of an eight-hour workday a maximum of 40 pounds..." The ALJ then stated "the undersigned further finds that this opinion is only partially consistent with the objective evidence of record, in so far as this opinion restricts the claimant's lifting capacity to less than 50 pounds occasionally." (Tr. 22-23). He then discussed Dr. Page's consultative examination, and his opinion of "no impairment related physical limitation." While giving Dr. Page "significant weight" the ALJ went on to say that he "assigns the benefit of doubt to the claimant in assigning the current residual functional

---

[2]The plaintiff does not take issue with the Commissioner's findings regarding the severity of her mental impairment, but rather with his findings regarding her physical limitations.

5

capacity." (Tr. 23).

The ALJ then stated that the RFC he found was "supported by the record as a whle and the objective evidence of record." He discussed the opinion of non-examining State Agency physician Joe Allison, who found that plaintiff could lift or carry 50 pounds occasionally, and perform the other requirements of medium work except for exposure to fumes and like. The ALJ gave "great weight to this opinion as it is consistent with the objective evidence and the current residual functional capacity."[3] (Tr. 23).

The ALJ then mentioned the fact that "repeated physical examinations reveal that the claimant has good use of her arms and legs and moves about in a satisfactory manner..." and that she "has not required hospitalization due to pain." He noted that she "showed fairly good socialization with church and family, varied daily activities, shopping, and she can even operate a motor vehicle." He found her allegations of disabling pain "not supported by the record as a whole." (Tr. 24). Based upon her ability to do a reduced range of medium work, and the testimony of the vocational expert, he found that she was not disabled. (Tr. 27-28).

In her brief, plaintiff argues that the ALJ's RFC is not supported by substantial evidence. Specifically, she asserts that substantial evidence does not support the finding that she can lift and carry 50 pounds on an occasional basis. Being unable to perform work at the medium level of exertion, she points out that she would be disabled under Rule 202.04 of the Guidelines, which in essence states that a person who is 55 years of age with plaintiff's educational and vocational characteristics is disabled *per se* if limited to light work. Plaintiff

---

[3]Exactly what the ALJ means by this is somewhat disturbing. Read literally it means that the medical opinion of Doctor Allison gets "great weight" *because* it is consistent with the ALJ's already determined RFC.

6

points out that *SSR 83-5a* states that the medical-vocational guidelines in Appendix 2 of the regulations "are conclusive where the necessary findings with regard to each individual establish that a particular rule is met."

To be sure, the ALJ did not find that plaintiff met the criteria of Rule 202.04, but found that she was capable of medium exertion with some environmental and mental restrictions. If she is capable of medium exertion, she is not disabled *per se* under the Guidelines. The opinion of the VE would support the ALJ's conclusion that plaintiff is not disabled *provided* that there is substantial evidence that she can perform the exertional requirements of medium work.

Here is the pertinent evidence in that regard. Dr. McConnell, who examined her thoroughly, found she could only lift 40 pounds occasionally. Dr. Page, who also examined her to some extent, found she had no impairment-related limitations. The State Agency physician found she could lift 50 pounds occasionally as part of her job duties.

For some, it may be easy to think that the ALJ used the proof that supported his conclusion to find that she was not disabled because she could do medium work, knowing full well that if he did not so find, she would be disabled under the Guidelines. The Court certainly believes that the administrative system would not purposely contort the fact-finding process in this fashion.

However, it also strains credulity that this plaintiff, now 60 years of age, who was 58 years of age when the ALJ made his finding, who weighs 104 pounds and is five feet three inches in height can lift nearly half her body weight for even an "occasional" part of her work

7

day. While a person can no longer obtain social security disability benefits by simply being morbidly obese, one can certainly be so slight that when combined with advanced age it makes lifting such a weight an absurd possibility as part of the requirements of performing and keeping a job.

The Court well recognizes that the State Agency physician can constitute substantial evidence, and can trump examining and even treating physicians' opinions in the vast majority of cases for the reasons stated in such opinions as *Ealy v. Commissioner of Soc. Sec.* 594 F.3d 504 (6th Cir. 2010), and *Combs v. Commissioner of Soc. Sec.,* 459 F.3d 640 (6th Cir. 2006). However, in the opinion of this Magistrate Judge, the present case simply pushes the envelope to an extent bordering on the ridiculous.

The only medical assessment in this file that possesses the earmarks of being substantial evidence is the opinion of Dr. McConnell, and with Dr. McConnell's limitations, the plaintiff is disabled under Rule 202.04 of the Grids. In this case, with this plaintiff, Dr. Page's terse assessment also defies logic and common sense in the same fashion as that of the State Agency physician.

This case has been up the proverbial ladder once before to the Appeals Council level. The Court feels remanding for any purpose other than awarding benefits would be improper, and that the evidence is clear that she is disabled under the Grids. It is therefore respectfully recommended that she be awarded benefits commencing on August 12, 2007, when she attained the age of 55. It is also recommended that the plaintiff's Motion for Summary Judgment [Doc. 10] be GRANTED, and that the defendant Commissioner's Motion for

Summary Judgment [Doc. 14] be DENIED.[4]

                        Respectfully submitted,

                                                   s/ Dennis H. Inman
                                                  United States Magistrate Judge

---

[4]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).